## JONES v. DUERK et al.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. EQUITABLE ESTOPPEL.

    An intestate left a house and lot, which descended to his widow, two daughters, and a minor son. The husband of one of the daughters bought the property, taking a deed from all the heirs, except his wife and the minor son, and an agreement signed by the minor son and signers of the deed, providing for the execution of a conveyance of the son's interest on his becoming of age. All the heirs except the wife, who was not included, received their share of the consideration of the deed. The son died under age and unmarried. Later, the husband conveyed the property to the plaintiff. *Held*, that since the daughter had never in her lifetime asserted any right to the property of the deceased son, though she knew his title had not been conveyed, nor did her heirs at law assert title until many years afterwards, the grantee in the meantime having made valuable improvements thereon, the doctrine of equitable estoppel applies to the daughter and her heirs as heirs of the deceased son.

2. SAME.

    The heirs of the wife, she not having signed the deed or parted with her interest, who did not know that their mother possessed any interest in the premises until after all the improvements were made, and a few months before the suit in controversy, are not equitably estopped to set up their mother's title against the plaintiff.

3. PARTITION—IMPROVEMENTS—RENTS AND PROFITS.

    In 1859 a lot on which was a small cottage was sold to one who supposed himself to be the owner in fee. In 1873, the cottage being badly out of repair, a $3,500 house and store combined was put in its place. During these years the occupant paid insurance, taxes, and repairs, and gave mortgages on the property. Afterwards he sold the property to plaintiff, and

it was discovered that there was an outstanding title, in that grantor's wife, then dead, was a co-tenant to an undivided half thereof, in which part the grantor had an estate by curtesy. *Held* that, while the heirs of grantor's wife own a reversion in half the property after grantor's death, the plaintiff, by reason of the improvements made by his grantor in good faith, is entitled to an equitable lien on his co-tenant's share to the extent of the permanent improvements made; and, since the heirs have no present estate of enjoyment, plaintiff is not compelled to account for the rent and occupation since their mother's death.

Appeal from special term.

Action by Albert E. Jones against Martin Duerk and others. From an interlocutory judgment entered on the report of a referee in favor of plaintiff, defendants appeal. Modified and affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Philip A. Laing, for appellants Elizabeth Keifer and others.
D. E. Brong, for appellants Elizabeth Derringer and others.
John G. Milburn, for respondent.

GREEN, J. This action was commenced on the 6th day of June, 1895, for the partition of the premises described in the complaint. The plaintiff, as grantee of the defendant Martin Duerk, demanded in his complaint an adjudication that he is the owner of two-thirds of the fee and an estate during the life of the defendant Martin Duerk in the other third of the real property in question, and also demanded contribution from the other tenants in common for the expenses of improvements made, and taxes, assessments, and insurance paid by the defendant Martin Duerk. The appealing defendants admitted the plaintiff's life estate, and also an estate in fee in common in one-third of the real property in question, and denied all other claims advanced by him, and demanded that, if contribution should be decreed, there should also be an accounting for the use of the property. The issues raised were duly referred to a referee, to hear, try, and determine the same. The referee, by his decision, found that the plaintiff was the owner of an undivided two-thirds of the property, together with an estate during the life of Martin Duerk in the other undivided one-third thereof; that, by reason of the improvements which Martin Duerk had made upon the property, the plaintiff was further entitled to an equitable charge or lien on the lands to the extent of the value of such improvements, or to the value imparted to the lands by reason thereof, and which he fixes at the sum of $2,000; that the plaintiff, as the owner of said lien and charge, was entitled, out of the net proceeds in excess of $1,750, to be paid such sum of $2,000, or so much thereof as such excess would pay; and that the sum of $1,750, representing the value of the lands, and any excess of the net proceeds after the payment of the sum of $2,000, representing the value of the said lands without improvements, should be divided and apportioned according to the interests of the respective parties, as found in his decision.

The facts in this case are practically undisputed and uncontradicted. The source of title of all parties is Jacob Karst, who died, intestate, in May, 1847, the owner of the fee of the premises in question, which were at that time free and clear of all incumbrance. Jacob Karst left,

him surviving, Elizabeth Karst (afterwards Duerk), Phillipine Karst, and Jacob Karst, Jr., his only children and only heirs at law. The son, Jacob Karst, Jr., was at the time of his father's decease a minor, and died before attaining his majority. The defendant Martin Duerk is a German, and, at the time of the trial, was 71 years of age. He came to this country in January, 1847, a short time previous to the death of Jacob Karst, Sr. At the time of his arrival in this country, he was 21 years of age. He went directly to Buffalo. He was a stonecutter by trade, but afterwards learned the cooper's trade, and thereafter engaged in the leather business, in a small way, on Pine street, in the city of Buffalo. In the year following his arrival in Buffalo, he married Elizabeth Karst, who was his cousin and a daughter of Jacob Karst, who was then deceased. The house upon the premises in question was, after the marriage of Martin and Elizabeth, occupied by them and by Jacob's widow, her daughter Phillipine, and her son, Jacob Karst, Jr. Martin and his wife occupied the lower portion of the house, and the others the upper portion. The widow had but a small income, being only that which was received from Martin Duerk for the rent of the lower rooms of the house, and what she was able to earn by her own exertions. She had the two children at home to support, and frequently was unable to pay the insurance and taxes upon the property. Martin Duerk always supposed that she owned the property, and always paid the rent to her. . It appears that matters continued in this way until the month of February, 1859, when it became apparent to all parties interested that the widow was unable to longer care for and pay the amount necessary for the protection of the property. The matter was discussed by the family and the family's friends, and a plan for relief was agreed upon, which resulted in an understanding and agreement, entered into and approved by all interested, that the property should be sold. The history of that period of the Karst family is best told by the evidence of those who were present as actors or advisors at the meeting held to discuss the situation and bring about the needed relief. Martin Duerk testified:

"I had been paying the insurance for the old lady. Finally she said she could not pay any longer, and offered to sell the property. At a family meeting it was decided by the old lady to appraise the property. This appraisal was made by John Geyer and John Cook at about seven hundred dollars. The property was then offered to the children in succession, who refused it. I then offered to take it at the appraised value. This all occurred about 1859."

Philip Duerk, a cousin of Martin, who was sworn upon this trial in behalf of the defendants, testified in part as follows:

"Elizabeth Karst was an old lady. She had to go out washing when I came into this country. There were sewers made, streets paved, gaslights put in, curbstones set, and she could not pay all these expenses any more, and Martin had to help pay it; and then there were two neighbors there, as Martin said this morning, one named John Geyer, and the other John Cook, two honest friends to him; and Martin was there, of course, his mother-in-law brother's son, and his wife was his daughter. Those two men came and says, 'It is no use to have trouble,' and Martin says, 'No,' because them two came to sell the house to him, and to keep the two rooms for— What you call that in English? 'As long as you live, make that your home there;' have their life and have their board; and Martin said he guessed he would take it, because she offered it to the other son-in-law; and as he was poor as a mouse, and

couldn't buy it, and the other son was a minor, and he couldn't buy it, so, of course, Martin had the property very cheap for seven hundred dollars. So, when the bargain was made, the papers were drawn in Stellwagen's. Nobody didn't say anything about it that it was not enough. They were all satisfied; and, after all were satisfied, I was satisfied too."

The witness further testified:

"We were all at Stellwagen's when this thing was closed up, all the interested parties. I didn't know it, but they wrote me down to Niagara Falls, and I came up."

Jacob Karst, Jr., was then a minor, 16 years of age. The Stellwagen referred to was a German insurance agent and notary public, who at that time was largely consulted by Germans, especially by those unfamiliar with the English language. He transacted a large business in conveyancing and matters pertaining to real-estate transactions, where people of that class and condition were interested. Under his advice, he being the adviser of all the parties interested in the real estate, the property was, on the 24th day of February, 1859, sold to Martin Duerk, at the appraised value, $700. A quitclaim deed was made, executed, and delivered by Elizabeth Karst, the widow, Phillipine Nuel (formerly Phillipine Karst), one of the daughters of Jacob Karst, deceased, and Phillipine's husband, to the defendant Martin Duerk. In this deed there was reserved the right to Elizabeth, the widow, and her son, Jacob, to occupy the upper story of the house on the premises during her lifetime and during his bachelorhood, free of rent. The deed was recorded in Erie county clerk's office on the day it bears date. At the time the deed was prepared, an agreement was also prepared by Mr. Stellwagen, which provided, in substance, that Jacob Karst, Jr., upon his attaining his majority, would execute a conveyance of his interest in that property to the defendant Martin Duerk. This agreement was executed by the same parties who executed the quitclaim deed to Martin Duerk, and also by Jacob Karst, Jr. The latter died four months before attaining his majority, having, with his mother, lived on the property about four years after it had been deeded to Martin Duerk. During the lifetime of Jacob, Jr., Martin Duerk had made payments to him personally upon the amount which Jacob, Jr., was entitled to receive under the terms of the agreement for the conveyance by him of his interest or share in the property. Upon the death of Jacob Karst, Jr., Martin Duerk paid the balance then unpaid upon the share of Jacob Karst, Jr., to the latter's mother, Elizabeth Karst, and took a receipt therefor, in full of the amount to be paid for the share of Jacob Karst, Jr., which receipt was signed by Elizabeth Karst, his mother. This receipt also was drawn and witnessed by Mr. Stellwagen.

It is uncontradicted that the defendant Martin Duerk, upon the execution of the papers which were intended to pass the title of this property to him, drew the $700 agreed by him to be paid therefor out of the bank, and, out of that money, paid to all of the parties interested (except his wife) the amount agreed to be paid to each for his interest in the property. It will be observed that the wife of Duerk did not sign the deed, nor the agreement, to Martin Duerk,

her husband. She was present, however, at the family gathering called and held for the purpose of devising ways and means to secure to her mother, the widow Elizabeth, and to her brother, Jacob, sustenance and support during the life of the widow and the minority of Jacob. It is very apparent that, if the attention of these parties had been called to the necessity of Elizabeth Duerk signing the deed of this property to her husband, it would have been done. It is patent from the evidence that none of these parties considered or thought that the wife of Martin had any interest to convey to her husband, but that it belonged to him by virtue of the marital relation. However this may be, the referee has found that the defendant Martin Duerk never acquired the interest of his wife, Elizabeth, in the share she obtained as the heir of Jacob Karst, her father, but that it passed to her children, who are two of the defendants in this action. The last-named defendants, however, insist that they are also entitled, as the heirs at law of their mother, Elizabeth, to the share or interest of their mother to which they alleged she was entitled as the heir at law of Jacob Karst, Jr. The respondent contends that the finding by the referee that Martin Duerk, by reason of the agreement by which he was to receive a conveyance from Jacob, Jr., when he reached his majority, and by reason of the fact that Martin Duerk had fulfilled all the terms of the agreement and of the deed respecting the payment of Jacob Karst, Jr., of the amount of his interest in the property, and by reason of Martin's permitting Jacob, Jr., to occupy the house up to the time of his death, as provided for in the deed, became the equitable owner of an undivided one-third of the premises which passed by descent to Jacob Karst, Jr., and that Martin Duerk is now to be deemed the legal owner of such interest. The argument of respondent upon this proposition is that as Jacob Karst, Jr., had knowledge of, and participated, by his presence, in, the arrangements and agreements of the family, which resulted in an endeavor and attempt to vest the title of all this property in Martin Duerk, who paid a full consideration for Jacob's interest in the same, Jacob Karst, Jr., and his heirs are equitably estopped from claiming the share to which they would otherwise be entitled as heirs of their mother, who, upon the decease of Jacob, Jr., as his heir, became entitled to an undivided one-sixth of the property in question.

There can be no question but that the evidence clearly discloses an intent upon the part of all the parties interested in this real estate to convey all such interest to Martin Duerk. The proposition to take the property came not from him, but from the then head of the family, Elizabeth Karst. She was the mother and the guardian in socage of the infant children. The value of the property was then small. The current expenses necessary to the retention of the property by her were such that she found it impossible to longer protect the same. The time came when it was necessary for all who were interested in the property, if they desired or expected to receive any benefit from the same, to take some action. There was no fraud or deceit practiced, alleged, or shown on the part of any of those interested in this real estate. All attempted to do what was

best for all under the circumstances. All were agreed upon the course to be pursued; and the testimony discloses that, when all had been done which they supposed necessary to vest in Martin Duerk the title to these premises, all were perfectly satisfied with the result obtained. Unfortunately, they were ill advised. The ignorance of their adviser, and no fault, fraud, or deceit on the part of any of the persons interested in this real estate, made possible the condition which now exists; and the important question in this case is whether Martin Duerk should suffer the loss of the interest in these premises which he purchased of Jacob Karst, Jr., and for which he paid full consideration, and the heirs of Jacob, Jr., notwithstanding all this, be permitted to enjoy, as his heirs at law, the share in these premises already purchased and paid for by the defendant Martin Duerk.

As has been shown, Phillipine Karst (afterwards Phillipine Nuel), with her husband, John, joined in the deed of these premises to Martin Duerk. She also executed an agreement contemporaneously with the deed, whereby she, with her mother, husband, and Jacob Karst, Jr., among other things, for themselves and for their heirs, executors, administrators, and assigns, did "agree unto the said party of the second part (Martin Duerk), and bind themselves, for and in consideration of the conveyance of a certain lot of land to the party of the second part by deed bearing even date herewith, by some of them, and the payment of several sums of money to them, the receipt whereof is hereby acknowledged, and for the further consideration of the agreements and covenants hereinafter conveyed, on the part of the said party of the second part, that the said Jacob Karst, who is now a minor, under the age of twenty-one years, will, on arriving at maturity, execute to the said party of the second part a deed of his interest in said premises." Phillipine Nuel received the consideration agreed to be paid to her by Martin Duerk, by the terms of this instrument. The latter was induced to purchase these premises, and to pay therefor the sum agreed upon, provided he could obtain the title therein, with which Jacob, Jr., was then vested, and which he could not then legally convey by reason of his infancy. The inducement thus held out by Phillipine Nuel and the others interested, by giving such agreement to protect his title so far as Jacob Karst, Jr., was concerned, resulted beneficially to Phillipine Nuel and the others interested in the property, in that she was enabled to dispose of her interest, and to receive full consideration therefor. The agreement was a part of the transaction which brought about the sale of the premises to Martin Duerk, and which induced him to pay full consideration for such premises. It clearly appears that Phillipine Nuel, so far as she was concerned, had fully protected the purchaser of those premises against any claim which the infant might thereafter make when he had attained his majority. If the latter had survived that period, and had refused to convey his interest in the property to Martin Duerk, Phillipine Nuel would have been liable upon her covenant in damages for such refusal. The death of the infant before reaching majority rendered it impossible to specifically carry out the terms of

the contract. Phillipine Nuel, however, received the full benefit and consideration of the contract thus executed. It would be an inconsistency and an absurdity to hold that she, as an heir at law of Jacob Karst, Jr., can now claim, as against Martin Duerk, the title to the premises which she has covenanted and agreed should be vested in him. It would be an injustice to assist her or her heirs in violating her solemn agreement to protect the purchaser of those premises in the title which descended to her or to her heirs. It is not sought to enforce the covenants in the contract, but to compel her and her descendants to do equity concerning the property, the title to which she has covenanted to protect, to insure, and to vest in Martin Duerk, pursuant to the terms of her written agreement. It is not the contract of the infant, but of one interested in the same property with the infant, and who, for a valid consideration, has contracted to protect and to insure the purchaser against the title of the infant. It appears, too, that Phillipine Nuel, after the execution of this agreement on her part, was fully aware of the fact that Martin Duerk, relying upon his deed and her agreement with that of the others, to complete and perfect his title as to the interest of the infant, Jacob, treated the property as his own, and that he made valuable and permanent improvements thereon, in the belief that he was the owner thereof; and that she, knowing that the interest of Jacob Karst, Jr., had never been conveyed to Martin Duerk, and fully cognizant of the fact that she had never fulfilled her terms of the contract to have such conveyance made, never asserted any claim against him, nor did her heirs at law assert any such claim subsequently to her decease until the year 1895. This evidence, taken in connection with the agreement of Mrs. Nuel, presents a case against her of equitable estoppel; and, she being estopped, her heirs also are estopped. I am of the opinion, therefore, that Martin Duerk, by reason of the execution of the agreement and deed, and through the operation of the doctrine of equitable estoppel as to Phillipine Nuel and her heirs, became vested also with the absolute ownership of an undivided one-sixth of these premises, in addition to the undivided one-third thereof, with which it is conceded he is vested.

Elizabeth Karst Duerk, as has been shown, never signed the deed or the agreement. No obligation rested upon her to protect the purchaser of the premises by a conveyance of the interest of Jacob Karst, Jr. The record fails to disclose that Elizabeth received any consideration or benefit for her interest in the premises. She never parted with her interest. It appears from the record that her heirs at law were until 1895 ignorant of the fact that their mother possessed or was entitled to any interest in the premises, either as heir at law of Jacob Karst, Sr. or Jacob Karst, Jr.; so that the principle of estoppel, invoked by respondent's counsel, as to them, is not applicable. They knew that valuable improvements were being made upon the premises by their father, the defendant Martin Duerk. They permitted these improvements to be made without making any objection thereto, or asserting any claim or interest in the premises. But this was permitted and allowed through ignorance on their

part. They did not know or suppose that they had any claim to make, or any interest or right to assert, respecting these premises. In respect to their position and relation to these premises and the owner thereof, the case differs from those cited by respondent's counsel. It will be observed, upon an examination of those cases, that the principle of equitable estoppel was applied only where it appeared that the parties asserting the title after allowing the purchaser to make valuable permanent improvements upon the premises, in the belief that he was the owner, knew while such improvements were being made that they, and not the purchaser, were the legal owners of the premises. The principle of equitable estoppel, therefore, was not applicable to Elizabeth Duerk, and cannot, consequently, be applied against her heirs. In this respect the learned referee committed error, which calls for a modification of the judgment in the manner hereinafter indicated.

A further question for examination is whether the permanent improvements made by Martin Duerk upon the property became an equitable lien or charge on such property to the extent of the enhanced value imparted to the lands by reason thereof. It appears from the evidence that when Martin Duerk purchased these premises, in 1859, there was upon the same a small story and a half frame cottage, which had been erected many years before; that it had been frequently repaired; that, at the time it was sold and removed from the premises, it was badly out of repair, and considerable expenditure would have been necessary to put it in proper condition; that, in 1873, Martin Duerk erected upon the premises a brick structure, being a store and residence combined, costing $3,500; that the frame cottage which was upon the premises at the time Jacob Karst died, in 1847, was removed from the lot, to give place to the new building. There is nothing to show that this was an improper use to make of the premises, or that it was done other than to meet the requirements of the situation, brought about naturally and necessarily by the changing conditions and necessities incident to the constant growth of a great, enterprising, and progressive city. After its erection, the store part of the building was used and occupied for commercial purposes, and the other portions thereof were used as a residence by Martin Duerk. He transacted business there for many years. There is nothing to show that the improvement was inconsistent with the value and location of the land, but the evidence furnishes adequate reason for such improvement. He certainly was justified, as appears from this evidence, in doing as he did do. He entered into the possession of the property in 1859, immediately after the sale of it to him. He acted in all respects as the owner of the fee. He treated the property as his own. He gave mortgages upon the property for the purpose of raising money to make improvements thereon, and used the money thus obtained in making such improvements. He kept the property insured, and paid the insurance premiums thereon. He paid the interest and the principal upon the mortgages which he gave upon the property, paid the taxes and assessments, and made all necessary repairs thereon. All this he did in the honest belief and supposition

that he was the sole owner thereof. The referee has so found, and the evidence is abundant to substantiate that finding. Practically it is undisputed. It is asserted upon this point by appellant's counsel that he was aware that he did not have the title to the interest of Jacob Karst, Jr. The answer to that is that Jacob Karst, Jr., then 16 years of age, personally participated in the family arrangement which resulted in the deed and agreement, whereby it was intended to vest Martin Duerk with the title to the property in question. Jacob Karst, Jr., signed the agreement, and also participated in the consideration paid by Martin Duerk for Jacob's interest in the premises. Martin knew that he had paid the full consideration for such interest. He had also the agreement of Phillipine Nuel, the only heir at law of Jacob Karst, Jr., other than Martin's own wife, from which he had a right to suppose that, so far as Phillipine Nuel at least was concerned, he was fully protected as to the interest of Jacob Karst, Jr. Martin Duerk, unacquainted as he was with the necessary legal requirements to completely and legally vest this title in him, had a right to suppose and a right to believe, as he did, that he was the owner of the fee of the premises in question. But it has been disclosed in this action that, at the time of making such improvement, he did not own the fee of all the land; but, as to an undivided one-half thereof, he was a co-tenant with his wife, Elizabeth, who was then occupying the premises with him, and continued with him in such occupation down to the time of her decease, in 1881, when he became entitled to a tenancy by the curtesy in the undivided one-half thereof, of which his wife died seised. I am of the opinion that as Martin Duerk made these improvements in the belief that he was the owner of the entire fee of the premises, and as such improvements were made under the circumstances disclosed in this case, he became entitled to an equitable lien upon his co-tenants' share, to the extent of the improvements which he has made in that belief and under that supposition.

"If one tenant in common, who is in possession, supposing himself legally entitled to the whole premises, erects valuable buildings thereon, he will be entitled to an equitable partition of the premises, so as to give him the benefit of his improvements." Town v. Needham, 3 Paige, 545.

In Conklin v. Conklin, 3 Sandf. Ch. 64, an allowance was claimed in the bill for the sum laid out in improvements to the extent of the value of the premises; and the court there held that "three of the sons, having expended a large sum in valuable improvements on the premises, supposing that they were the sole owners, were allowed, in partition, for such amount as the present value of the premises was enhanced by such improvements."

The complainant in the case of St. Felix v. Rankin, 3 Edw. Ch. 323, supposing that he had the entire title, improved a portion of the real estate, made mortgages, and sold a portion. It afterwards appeared that the legal title to a portion thereof was in a third person's heirs. In a bill for partition it was held that the complainant and his grantees should have the improved portion, and that his mortgages should be liens thereon.

The court, in Ford v. Knapp, 102 N. Y. 142, 6 N. E. 286, says:

"The authorities leave us at liberty to consider whether, upon the facts and circumstances of this particular case, the improving tenant ought to be protected, and furnish us with the power to grant the protection if it may justly be demanded."

The facts and circumstances afford ample ground for the protection of the improving tenant for permanent improvements made by him, to the amount and extent as found by the referee. If we are justified in our conclusions as to the title and interest of Martin Duerk in these premises, he has been, since 1863 at least, the owner in fee of an undivided one-half thereof, and his wife, Elizabeth, of the other undivided half. From 1863 to her decease, in 1881, Elizabeth Duerk was, with her husband, in the occupancy of the premises. Upon her decease, in the last-named year, Martin Duerk, as tenant by the curtesy, became vested with the present enjoyment of her estate. Her heirs have a reversionary interest in the undivided half of the premises of which their mother died seised. Still, they had no present estate of enjoyment which entitled them to compel Martin Duerk to account for the rent and occupation since their mother's death. During all this time no one but he has ever had a right to the occupancy and possession of the property. Had he been in the possession of this estate, to the exclusion of his co-tenants, having an equal right with him to possession thereof, then the question would have arisen whether he should not be charged with such use and occupation if he were credited with the improvements made. But, under the facts and circumstances existing in this case, we are of the opinion that he should not be held to account for the rent and occupation of such premises.

The judgment should be modified so that it shall declare that the interest of the plaintiff herein, as the grantee of Martin Duerk, is an undivided one-half of the property and premises in question, and that the interest of the defendants Henry Duerk and Elizabeth Derringer, as heirs at law of Elizabeth Duerk, deceased, is the other undivided one-half thereof, subject to the life estate of Martin Duerk therein, as tenant by the curtesy; and, as so modified, the judgment should be affirmed, without costs of this appeal to any party. All concur.