JOHN McCREARY, *et ux.*, v. LAKE BOULEVARD SPONGE EXCHANGE CO., INC.

183 So. 7.
Opinion Filed August 1, 1938.

*Archie Clement* and *J. C. Davant,* for Appellant;

*McMullen, McMullen & Pogue* and *Carey & Harrison,* for Appellee.

BUFORD, J.—The appellee owned a certain lot in Tarpon Springs, Pinellas County, Florida, the same being lot 22 in block 7 of Lutean Shores Subdivision. The appellants owned the adjoining lot No. 21. Appellee, wishing to erect buildings on its lot, had a survey of the lots made. The surveyor surveyed and staked out a plat of land which he found to be lot 22. Thereupon, appellee who was complainant in the court below, erected two buildings on the property surveyed as lot 22. Appellants were cognizant of the erection of these buildings as construction went along. After the buildings were completed appellants advised the appellee that the buildings were on lot 21.

A resurvey shows that the first survey was erroneous and that one of the buildings erected was entirely on lot 21 and about two-thirds of the other building was on lot 21. Appellants then notified appellee that they intended to remodel and change one building and that part of the other

building which was on lot 21 to suit appellants' convenience and that they would do so under claim of ownership of the buildings having vested in them by reason of having been built on their land.

Appellee then filed suit in equity in which it alleged the facts above set forth and prayed:

"Wherefore, the premises considered, your plaintiff respectfully prays that this Court forthwith, upon the filing of this bill of complaint, shall issue a temporary restraining order restraining and enjoining the defendants and each of them from attempting to tear down, alter or in anywise change the buildings located on the premises above set forth and forthwith enter an order restraining and enjoining the defendants from interfering with or molesting the plaintiff in the removal of the buildings from the defendant's premises to the plaintiff's premises, and to enter an order permitting the plaintiff to remove his buildings from the defendants' premises, and upon final hearing, decree what damage, if any, the defendants have sustained by reason of the plaintiff's error in building its buildings upon the defendants' property.

"And your plaintiff prays that the temporary restraining order as hereinabove prayed for be entered by this Court without notice to the defendants for the reason that the defendants, if notice is received of a hearing, your plaintiff believes will immediately begin to demolish, tear down or destroy the building above mentioned to the irreparable harm, injury and damage of your plaintiff."

Motion was made to dismiss the bill of complaint upon the one ground "because said bill is wholly without equity." Motion was denied and from the order denying the motion appeal was taken.

The appellant has stated one question in the brief for our consideration, as follows:

. "QUESTION ONE: WHEN A PARTY, THROUGH A MISTAKEN IDEA OF THE LOCATION OF BOUNDARY LINE, SEPARATING HIS PROPERTY, ERECTS ONE BUILDING WHOLLY UPON THE PROPERTY OF ANOTHER, AND ANOTHER BUILDING PARTIALLY THEREON, CAN THE ADJOINING OWNER FORBID REMOVAL OF SUCH BUILDINGS AND CHANGE AND REMODEL THEM HIMSELF?"

The question is differently stated by the appellee, as follows:

"DOES A BILL OF COMPLAINT ALLEGING THAT THE PLAINTIFF AND THE DEFENDANTS OWNING ADJACENT LOTS, THE PLAINTIFF DECIDING TO ERECT A BUILDING UPON HIS LOT AND EMPLOYING A SURVEYOR TO STAKE OUT HIS BOUNDARY LINE, AND ONE OF THE DEFENDANTS POINTING OUT TO THE SURVEYOR WHAT SHE CONCEIVES TO BE THE BOUNDARY LINE OF HER PROPERTY, AND THE PLAINTIFF RELYING ON THE SURVEY, ERECTS BUILDING PARTLY ON THE PLAINTIFF'S LAND AND PARTLY ON DEFENDANT'S LAND, AND IMMEDIATELY DISCOVERING THE MISTAKE OFFERS TO DO EQUITY BY EITHER BUYING THE DEFENDANT'S LAND OR BY PAYING THE DEFENDANT DAMAGES SUSTAINED BY REASON OF THE MISTAKE, CONTAIN EQUITY?"

The whole contention of the appellant is that because the law recognizes that any buildings erected on real property become a part of the realty and cannot be removed without consent of the owner that in this case the owner of lot 21 acquired title to the buildings erected on such lot and have the right to retain the same. There are some authorities supporting appellant's contention, but we think, and hold, that while it is true that buildings erected on real estate become a part of the realty, it does not follow that under certain circumstances and conditions they may not be removed.

The bill in this case alleges, among other things, that:

"Plaintiff further alleges that at the time the surveyor was making the survey as hereinabove set forth that the defendant, Mrs. McCreary, pointed out to the surveyor what she thought to be the defendant's property line; that said line so pointed out by the said defendant was in error some 15.4 feet; that this error on the part of the defendant is largely responsible for the plaintiff's surveyor making error in locating the building line and staking out the lines of the plaintiff's lot."

The bill also alleges that plaintiff had offered to do equity by paying the defendant any damages which might have been sustained by reason of the erection of the buildings on the property, or by paying the defendants a reasonable price for the property and taking title thereto, but the defendants refused either to sell the lot to the plaintiff or to allow the plaintiff to remove the buildings from the lot.

Section 3239 R. G. S., 5047 C. G. L., to 3245 R. G. S., 5053 C. G. L., apparently establish a policy contrary to the doctrine that buildings and improvements erected upon real estate become the absolute property of the owner of the real estate.

Courts of equity were established to grant relief in accordance with right and justice in cases where the law by reason of its universality was deficient. We think the weight of authority sustains the proposition that in a case of this sort, especially where both parties are shown by the allegations of the bill to have been mistaken as to the boundary line, that as between the original parties, if by mistake one erects his building on the land of the other the land owner on his part may by mandatory injunction, compel the removal of the building, and, on the other hand, he who has by mistake erected the building may by proceedings have leave to remove the same on payment of any damage accruing to the freehold by reason of his mistaken action.

Such was the holding in the case of Trunnell, *et ux.,* v. Tonole, *et al.,* 208 Pac. 583, a case decided by the Supreme Court of Oregon, in the following language:

"One who by mistake has erected a building on the land of another may by proper proceedings have leave to remove the building on payment of any damage to the freehold."

In Calloway Bank v. Ellis, *et al.,* 238 S. W. 844, the Court of Appeals of Springfield, Missouri, held:

"The law is also well settled that where a person in good faith and under the belief that he has title erects a building upon the land of another, and with the knowledge and consent of the owner, the true owners of the land do not become the owners of such improvement and the builder can recover for the value of his improvements. Sires v. Clark, 132 Mo. App. 537, 112 S. W. 526; Richmond v. Ashcraft, 137 Mo. App. 191, 117 S. W. 689; Smith v. Mount, 149 Mo. App. 668, 129 S. W. 722."

In Casteel v. Pennington, 228 Ky. 206, 14 S. W. (2d Sers.) 753, the Court of Appeals of Kentucky said:

"As Casteel proved title, and the deed to him was not champertous, it remains to determine whether the facts are such as to estop him from claiming the land. The only facts relied on are that Casteel stood by and permitted Pennington to construct a valuable wholesale grocery on a portion of the lot and never opened his mouth until after the building was completed. The rule that one who stands by and sees another purchase land or enter upon it under a claim of right, and permits such other to make expenditures or improvements under circumstances calling for notice or protest, cannot afterwards assert his own title against such person (Empire Coal Mining Co. v. Empire Coal Co., 183 Ky. 699, 210 S. W. 474) has no application to the facts of this case. Pennington erected the improvements outside of his deeded boundary. Therefore, he was not a pur-

chaser of any portion of the land in controversy, nor did he enter thereon under a claim of right. Moreover, the facts are not sufficient to show that he relied on, and was misled by, Casteel's conduct. In the circumstances his mere silence was not sufficient to deprive him of all right to the property. However, the case is in equity, and equitable principles will be applied. The land in controversy, though about 140 feet long, is only about 10 or 12 feet wide at one end and runs to a point at the other end. It is of little value considered either as a separate tract, or in connection with Casteel's other land. Not only so, but there is room for confusion and doubt as to the exact location of the boundaries set forth in the deeds under which Pennington and Casteel hold. Should the land be restored to Casteel it will not only necessitate the removal of the building, but will bottle up Pennington's business establishment in such a way as to require the expenditure of a large sum of money in order that he may have access to the adjoining highway. In other words, the value of the lot is insignificant compared to the damages that will result to Pennington. In view of this situation, we think the ends of justice may be fully met by requiring Pennington to pay to Casteel the reasonable market value of the land, together with damages for its detention."

In a note in 76 A. L. R., page 304, it is said:

"It is said to be a very familiar rule of the law of estoppel that if the owner of an estate stands by and sees another erect improvements on the estate in the belief that he has a right to do so, and does not interpose to prevent the work, he will not be permitted to claim such improvements after they are erected."

And it is further said:

"The value of improvements in such a case has been held to constitute a lien. McClaskey v. Barr (1894; C. C.) 62

Fed. 209; Union Hall Asso. v. Morrison (1874) 39 Md. 281; Hannival & St. J. R. Co. v. Shortridge (1185) 86 Mo. 662; Jones v. Duerk (1898) 25 App. Div. 551, 49 N. Y. Supp. 987; McBride v. McNeil (1912) 27 Ont. L. Rep. 455, 9 D. L. R. 503.

" 'The doctrine proceeds upon the principle that one person will not be permitted, in equity, to enrich himself by the loss or at the expense of another, when the loss would have been avoided had the former acted honestly and in good faith. His silence, in such case, is tantamount to a fraudulent concealment of his title and to the extent that the party in possession has been thereby misled into the making of improvements that he otherwise would not have made, a court of equity grants relief by charging the value of the improvements as a lien upon the estate to which they have been added.' "

In the case of Crest v. Jack, 3 Watts (Pa.) 238, 27 Am. Dec. 353, it is said:

"There are, however, cases in which an owner of land standing by and permitting another to expend his money in improving it has, in equity, been deemed a delinquent, and been compelled to surrender his right on receiving compensation, or else to pay for the improvement. But in these cases there is always some ingredient which would make it a fraud in the owner of the land to insist on his legal right. There is something like encouragement to the other's going on; or the one party acts ignorantly and without the means of better information, and the other remains silent when it is in his power to prevent him from expending his money under a delusion. To permit such a one to take advantage of the mistake would be revolting to every sentiment of justice."

In the case of Bohn v. Hatch, 133 N. Y. 664, 30 N. E. 659, it is said:

"To move a court of equity to support a claim for the improvements put upon the property of another, it should at least appear that the occupants had acted upon a belief as to their title, which had some probable basis, and that the real owners, knowing of their acts, suffered them to go on without notifying them."

"That one may recover for improvements in proceedings instituted by the real owner, 'it must appear that the party making the improvements did so under a claim of title which turned out to be defective, or under some mistake concerning his rights, or because he was induced to incur the expenditures through the fraud or deception of the owner.' Williams v. Vanderbilt, 145 Ill. 238, 21 L. R. A 489, 36 Am. St. Rep. 486, 34 N. E. 476.

"It has also been declared that one who knowingly and silently permits another to expend money on land under a belief that he has title will not be permitted to set up his right to the exclusion of the rights of the one who made such improvements."

While this identical question has not heretofore been presented to this Court, the principle involved was presented in the case of Hagan, et al., v. Ellis, 39 Fla. 463, 22 Sou. 727, where we held:

"If one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person."

So it is that we must hold that the bill was not without equity and that the order overruling motion to dismiss was without error and should be affirmed.

It is so ordered.

Affirmed.

ELLIS, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.