84 So.2d 28 (1955)
Lloyd F. HEDGES, Appellant,
v.
Francis E. LYSEK and Lucille P. Lysek, his wife; John B. Matthews and Kathryn I. Matthews, his wife; Mayer C. Kohn and Dora Kohn, his wife; W.F. Dingus and F.I. Grey, Trading and doing business as Grey & Dingus, Appellees.
Supreme Court of Florida. Special Division B.
December 14, 1955.
*29 Marshall & Rives, Clearwater, for appellant.
W.H. Brewton, Dade City, H.H. Baskin and H.H. Baskin, Jr., Clearwater, for appellees.
THORNAL, Justice.
Appellant Hedges, who was plaintiff below, seeks reversal of a summary decree in favor of appellee, Kohn, in a declaratory judgment proceeding in which plaintiff also sought reformation of a deed and other incidental relief.
On May 24, 1951, Lysek and wife agreed to sell to Hamil the following described property, to-wit:
"All that part of the NW 1/4 of the NW 1/4 of Section 34, Township 24 South, Range 16 East, Pasco County, Florida: less the North 410 feet thereof, lying West of U.S. 19 Highway"
For brevity we shall hereafter refer to this property as "Black Acre".
On August 11, 1951, Lysek and wife agreed to sell to Matthews a tract of land which included the NW 1/4 of the NW 1/4 of Section 34, Township 24 South, Range 16 East, lying East of U.S. Highway No. 19, and Tracts 29 and 30 (among others) in the same Section. For brevity we shall refer to this tract as "White Acre".
Neither agreement was recorded. On August 16, 1951, Matthews conveyed White Acre to Kohn by warranty deed and on August 18, 1951, Lysek conveyed White Acre to Matthews by warranty deed. The last two deeds were recorded respectively on September 18, 1951, and August 20, 1951.
On March 31, 1952, Hamil agreed to sell Black Acre to Hedges and on April 28, 1952, Hamil reconveyed Black Acre to Lysek by quitclaim deed, who thereupon immediately conveyed the same tract by warranty deed to Hedges.
The problem presented to us arose out of the apparent location of U.S. Highway 19 as superimposed on an old plat of the area. Prior to the original agreement to sell to Hamil, Lysek had started construction of a small house on the West side of U.S. No. 19 upon what he thought was a part of Black Acre. He then thought that White Acre was entirely on the East side of the road. Actually, a small triangular portion of White Acre lying in a part of so-called Tracts 29 and 30 was West of the highway, and it was in this small triangle that the house was actually built.
Until appellant Hedges bought Black Acre, thinking that the house was located thereon, and, shortly after his purchase, had a survey made which revealed the error, every party to this cause sold and bought the respective parcels with reference to the location of the road as reflected by the old map above mentioned. Lysek thought he was selling the house to Hamil and later to the plaintiff Hedges on the West side of the road, and they thought they were buying it when they bought Black Acre. Lysek thought he was selling unimproved acreage to Matthews and both Matthews and his grantees, Kohn and wife, thought they were buying unimproved acreage East of the road and actually so intended.
Appellee, Kohn, relied on the same inaccurate map that all of the others relied upon and although the map does not reflect the location of Highway U.S. No. 19 correctly, the parties also dealt on the basis of the road as constructed on the ground as being the East and West boundaries of the property which they intended to purchase and which they thought they had purchased. No one had any idea that the small house was on a part of the *30 land actually conveyed to Kohn, obviously through error, until appellant Hedges had the survey made on May 16, 1952, subsequent to his purchase. Kohn himself testified by deposition that he did not realize that the house was on the description conveyed to him until after he had a survey made in September, 1952, about thirteen months after he bought the land, all of which he assumed to be on the East side of the highway. Kohn bargained for and paid for vacant land according to the map supposedly entirely East of the road. Hedges bargained for and paid for land with a house on it entirely West of the road.
There is not the slightest doubt indicated by this record that the small house was constructed on the triangular portion of White Acre completely through mistake and the original mistake thereafter permeated all of the transactions with all of the parties. The original grantor Lysek and the realtor, who handled every one of the transactions, unequivocally sustained by affidavit the position of the appellant that the problem before us was conceived in a bona fide mistake and nurtured into fruition by the continuity of the mistake that was preserved in all of the dealings.
The obvious mistake is thoroughly supported by the deposition of appellee Kohn himself who admits the error and merely in effect relies on the proposition that he has a warranty deed covering the description that happens to include a house which he, in truth and in fact, did not bargain for and did not pay for. The facts before us present an almost perfect case of mistake which is one of the historic incentives for the application of equitable doctrines. We mention at this point that when appellant Hedges was negotiating with Hamil for the purchase of Black Acre he learned through an abstract examination that the fee title to Black Acre remained in the original grantor Lysek. It was because of this fact that at that time Hamil reconveyed Black Acre by quitclaim deed to Lysek who thereupon conveyed it to Hedges by warranty deed.
In the quitclaim deed Hamil specifically stated that it was the purpose of the deed to convey back to Lysek "all right, title and interest of the grantor under and by virtue of" the unrecorded agreement which Lysek had executed in favor of Hamil.
The chain of events should be briefly reviewed. When Hamil executed the quitclaim deed to Lysek intending to reconvey to him the land on which the small house was located, in fact Lysek had previously conveyed White Acre to Matthews and the latter had conveyed it to Kohn, both by warranty deeds. Before the trial Court and in this Court Kohn contends that even though the record sustains the conclusion that Hamil was in possession of the house located on the small triangle of White Acre, when Lysek conveyed all of White Acre to Matthews by warranty deed, nevertheless, the subsequent quitclaim to the original grantor of both parties eliminated the effect of the occupancy by Hamil and restored to Lysek the title unencumbered by the occupancy of Hamil.
To support his contention appellee relies upon the so-called doctrine of "after acquired title", which simply stated means that even though at the time Lysek conveyed White Acre to Matthews (Kohn's grantor), Hamil was in possession of the house, nevertheless, when Lysek subsequently obtained a quitclaim deed from Hamil, the elimination of Hamil's apparent interest in White Acre by virtue of his occupancy alone immediately inured to the benefit of Kohn under the warranty deed. He then contends that Lysek and all those claiming under him likewise immediately became estopped to question the title which he, Kohn, received by virtue of the warranty deed, strengthened by the "after acquired title" obtained by Lysek under the quitclaim deed from Hamil. To support his position appellee relies on Moralis v. Matheson, 75 Fla. 589, 79 So. 202; Farrington v. Greer, 94 Fla. 457, 113 So. 722; and similar cases.
Admittedly, the doctrine of "after acquired title" is thoroughly grounded in our *31 system of jurisprudence and we recognize it. However, it does not control the case before us. In the instant case no one questions Kohn's title to the property we have described as White Acre. He has the title free and clear so far as the record shows. The problem before us involves merely the question of the ownership of the house which was placed on the land that ultimately reached Kohn through a mistake of fact which was mutual to all of the parties in that all of them, including Kohn, labored under the same erroneous impression as to the exact location of the property which he purchased.
Appellee further contended that his warranty deed covering White Acre was of record when appellant made his purchase of Black Acre and that by searching the records appellant could have ascertained this fact. This leads then to the contention that appellant was negligent in failing to do so. However, the record shows that appellant had the title to Black Acre searched and the mere fact that the title to White Acre was in appellee's name adds nothing toward a solution of the problem because the mistake was not one of title but rather one relating to the location of house which could have been revealed only by an accurate survey and which was revealed by the survey obtained by appellant. We cannot find from the record that the appellant was guilty of negligence that would preclude calling upon a court of equity to relieve against a mistake of fact under which all parties labored.
The able Chancellor declared that there was no mutual mistake, that the doctrine of "after acquired title" applied and controlled, and that Kohn, being the owner of the land described as White Acre, also ipso facto owns the house erroneously constructed on the land. It is reversal of this decree that appellant seeks.
After a thorough consideration of this record, we are impelled to the conclusion that the Chancellor was in error in finding that there was no mistake of fact and by applying the doctrine of "after acquired title" to the exclusion of the broad but equally well founded principle that when parties involved in a transaction have all labored under a mistake of fact common to all of them, equity should and will step in and restore each of the parties to the condition intended by them as if the mistake had not occurred. Historically, courts of equity came into being in order to provide a forum for the granting of relief in accordance with the broad principles of right and justice in cases where the restrictive technicalities of the law prevented the giving of relief. Inherent in equity jurisprudence is the doctrine that equity will always move to prevent an injustice engendered by fraud, accident or mistake. In the case before us we can see no equitable justification for permitting appellee Kohn to retain a building which he originally had no idea at all that he owned, which he never bargained for and which he never paid for. He intended to buy the land East of the road on the basis of the same map and the same notion as to the location of the road that led the appellant to buy the land West of the road. When the purchases were made all parties acted in absolute good faith. There was an unfortunate mistake that afflicted all of them and each of the transactions in which they were involved. Under such circumstances it is particularly appropriate that equity grant relief consistent with the rights of all parties concerned and suitable to the circumstances before the Court.
It is not appropriate under the facts of this particular case to decree a reformation of the deed to appellee Kohn. This is so for the reason that there was no error or mistake in the description of the property conveyed to him, there is nothing really to "reform" and he is therefore entitled to retain the title to all of the land which he bargained for by description and which his grantor intended to convey. Insofar as the description of the land is concerned there was therefore no mutuality of mistake between appellant *32 Hedges and appellee Kohn. See Holley v. May, Fla. 1954, 75 So.2d 696. For the same reason there was no equitable area for rescission or cancellation.
Among the alternative prayers for relief, however, appellant sought the right to remove the building from the land of appellee Kohn. Based on the facts appearing in the record this can easily be done at no great expense and it would seem without substantial damage to the freehold. In this regard our decision in McCreary v. Lake Boulevard Sponge Exchange Co., 133 Fla. 740, 183 So. 7, 9, would appear to be persuasive, if not controlling. In the case last cited we quoted with approval from Trunnell v. Tonole, 104 Or. 628, 208 P. 583, to support the following statement, to-wit:
"`One who by mistake has erected a building on the land of another may by proper proceeding have leave to remove the building on payment of any damage to the freehold.'"
The procedure approved in McCreary v. Lake Boulevard Sponge Exchange Co., supra, was reaffirmed by us in Holley v. May, Fla., 75 So.2d 696, as the proper procedure to be followed in a case of this nature. Our solution to the present problem has likewise received the stamp of legislative approval by F.S. § 70.06, F.S.A.
We, therefore, hold that the final decree appealed from should be reversed and that upon further hearing the appellant Hedges should be allowed a reasonable time within which to remove the building in question from the land of the appellee Kohn with provision for the payment to Kohn for any damages to his freehold resulting from the removal.
Reversed for further proceedings in accordance with this opinion.
DREW, C.J., and THOMAS and ROBERTS, JJ., concur.