ALLEN, Judge.
This appeal is prosecuted from a decree ordering the reformation of a deed of conveyance to conform to the intent of the original parties to the conveyance. Said reformation was sought by appellees as plaintiffs below.
The deed reformed was that originally given by defendant to plaintiffs’ grantors and predecessors in title. The deed in question described the half acre of land conveyed as:
“The E 66 feet of the EK of the SWK of the NWJ4 of the NWj4 of Section 12, Township 27 South, Range 23 East.”
Plaintiffs’ grantors and subsequently plaintiffs, however, went'into possession of a plot of ground, the eastern boundary of which was 36.6 feet west of the eastern boundary of the original plot owned by the defendant. If the description of the premises recited in the deed were to prevail, the defendant’s east boundary would bisect plaintiffs’ house. The suit was based on the theory that the deed in question did not accurately describe the land which was conveyed to plaintiffs’ grantors due to a mutual mistake of fact with regard to the location of the boundaries in question. Considerable evidence was adduced that the original parties to the conveyance thought that the easternmost 66 feet conveyed was bounded on the east by a north-south line on which was located a pine tree and bounded on the west by a north-south line on which was located an oak tree. The distance between these two north-south lines is 62.4 feet. One witness testified that he was present when defendant and plaintiffs’ predecessors were on the land and determining which land was to be conveyed. This testimony, if believed, would indicate that defendant had intended to convey the land located between the two trees.
The chancellor, believing the equities to be with the plaintiffs, decreed that the deed be reformed to read as follows:
“The west 62.4 feet of the East 99 feet of the East one-half of the SWK of the NWJ4 of the NWK of Section 12, Township 27 South, Range 23 East. The East line thereof being 1302.83 feet East of a Railroad spike driven in the Right of Way of U. S. Highway # 98 on the South line of said EK of the SWK of ^e NWK of the NWK of said Section 12, Township 27 South, Range 23 East, according to the plat hereto attached and made a part of this decree.”
A study of a plat made a part of this opinion shows that the property, as described in the deed, would encompass the property designated as B and C on the plat and would be a 66 foot frontage, whereas the property which the plaintiffs-appellees contend was purchased by them and was lo *248 cated between the oak tree and the pine tree would he in the property designated as A and B on the plat and would be 62.4 foot frontage.

Defendant was also enjoined from interfering with plaintiffs’ quiet enjoyment of the above described property and further enjoined to remove any encroachments thereon. The result is that defendant ends up with a 36.6' peninsular-like strip of land east of plaintiffs’ land which abuts her (defendant’s) other acreage on the north.
Appellant-defendant’s chief contention is that a writing memorializing an agreement differing from the description called for in the deed is essential to said deed’s reformation. Appellee contends that mutual mistake justifying reformation can be shown from circumstances surrounding and leading up to the making of the deed sought to be reformed. We hold that ap-pellee accurately states the rule to be applied to this case. Though it is true at law that parol evidence is inadmissible to vary the terms of a written instrument which is *249 itself deemed to be the best evidence of what the parties intended, a court of equity is afforded much wider latitude. Equity may reform an instrument to express the true intent of the parties and in so doing will give consideration to equities arising from facts completely alien to the sense and •construction of the instrument itself. Spear v. MacDonald, Fla.1953, 67 So.2d 630; Shell Creek Land Co. v. Watson, 1931, 101 Fla. 172, 133 So. 621; Williams v. Bettelini, 1915, 69 Fla. 193, 67 So. 857; 5 Fla.Jur. Cancellation, Reformation, Etc., § 57.
We further hold that there was sufficient competent evidence before the chancellor to justify his finding that the deed sought to be reformed in this case contained a misdescription which was the result of a mutual mistake of fact on the part -of the parties to said deed. In addition to the aforementioned testimony that the parties intended the conveyance to cover an •area between the two trees, other witnesses testified as to the general belief in the neighborhood that defendant’s eastern boundary was marked by a pine tree.
The confusion which arose in the sale of the subject property narrows to these facts.
The appellees, predecessors in title, Mr. and Mrs. Glenn Cotton, were purchasing property which they thought was located between a pine tree and an oak tree. Mrs. Roberts, the appellant, conveyed the East 66 feet of the Ej/£ of the SWJ4 of the NWJ4 of the NWj4 of Section 12, T. 27 S., R. 23 E. Mrs. Roberts claims that she was selling the East 66 feet of her property, a part of which was located between the pine tree and the oak tree. She says she did not know where her property lines were located.
In order to sustain the trial judge’s decree requiring reformation of the deed so as to encompass the land lying between the pine tree and oak tree there must be evidence showing a mutual mistake of the parties in the purchase of the property in question.
This court is not a trier of facts and must accord to the trial judge a presumption of correctness in his determination of facts. Therefore, we must examine the evidence adduced before the trial judge and see if it was sufficient to sustain a ruling of a mutual mistake for which reformation should be granted.
Mr. L. L. Lanier, a witness for the plaintiff below, appellee here, stated that he was reared on the property which Mrs. Roberts owns; that he is familiar with the property that was sold by Mrs. Roberts to Mr. and Mrs. Cotton back in 1949; that he was familiar with the pine tree at the eastern side of her property — that it is just on the west side of the eastern line of Mrs. Roberts’ property; that he has also been familiar with the oak tree through the years; that the acknowledged line through the years that separates the property which Mrs. Roberts now holds or held before she sold to the Cottons and the people on the east is about at that pine tree, and that there has been a fence down that line and a fence on the south side.
A witness, Joe Dees, said he lived approximately 53 years in the neighborhood of the property in dispute here; that he remembers the occasion when Mr. and Mrs. Cotton bought a small piece of property from Mrs. Roberts toward the southeast corner of her property; that he was there on the day that they were all surveying, stepping off and looking at it; and that he, Leslie Costine, John Lanier and Mrs. Lottie Roberts were present, along with Mr. and Mrs. Cotton.
Mr. Dees further testified that Mrs. Roberts stated that she wanted the oak tree to remain on her property after Mr. Lanier had demonstrated to all parties present that the east line of the Roberts property ran near the base of the pine tree. The front footage being sold was ascertained by Mr. Lanier’s stepping it off and, as well as the witness could determine, all parties present understood the land being sold to lie between the two trees. The stepping off *250 was done from the pine tree line on the east to the oak tree line on the west. This apparently was the method used to arrive at the 66 front footage. The fact that the actual distance between the two trees is only 62.4 feet can be attributed to this less than precise method of measurement. Mr. Dees further testified that the Cottons took possession of the premises between the two trees, built a house thereon and planted citrus trees. Witnesses Leslie Costine, Evelyn Lucille Bracey, a daughter of Mrs. Cotton, and Stanley W. Bracey, her husband, all substantiated the testimony of Mr. Dees in every material particular.
Mrs. Lottie A. Roberts, the defendant, testified in her own behalf and stated that Mr. Cotton came to her to purchase an acre of her land. She told him she would not sell an acre because that would include her oak tree and put the property line too close to her house. She also testified that Mr. Cotton said he just wanted enough to build a house next to Mrs. Cotton’s daughter and asked if Mrs. Roberts would sell him a half-acre. Mrs. Roberts stated that she told him she would. They talked about it several times and she told him if there was enough land on the east side of the oak tree she would sell him a half-acre. They went to a Mr. Lewis who made out the deed reflecting 66 front feet and Mr. Cotton asked that a lawyer examine it. An attorney, Mr. Case-bier, approved the deed and Mr. Cotton paid the money for and received the deed from Mrs. Roberts. Although Mrs. Roberts testified that she did not know where the east line was at the time of the sale and intended to convey only from this line west 66 feet, she admitted that up until eight years after the sale, when a survey was made, she had always recognized that the Cottons were living on and had improved their own property.
. There were other witnesses introduced by both the plaintiffs and defendant whose testimony was conflicting. We hold that the trial judge could have determined that the Cottons were buying the property located between the oak and pine tree and that Mrs. Roberts, the seller, defendant below, knew it to be the property which she was selling to them, although she also erroneously believed it to be the East 66 feet of her property. The lower court did not commit error in ordering the deed in question reformed so as to include the land between the oak tree and the pine tree.
In holding that the reformation of the deed in question was justified we are mindful of the admonition in law that proof of a mutual mistake permitting reformation of an instrument must be clear and convincing and feel that it was observed in this case.
The appellant, in her brief, states:
“In the instant case the proof is clear and convincing that no written contract existed between the parties and in the absence of an executed and enforceable oral agreement — which did not exist in this case — then clearly no enforceable contract existed and hence the remedy of reformation is unavailable because there was no antecedent ENFORCEABLE agreement between them. Even though the members of this Court might be impressed with the idea that there was an unexecuted oral understanding between Mrs. Roberts and Mr. Cotton prior to the time the deed was executed, such unexecuted oral understanding would be void and unenforceable in the face of our statute of frauds.”
There is authority for the view of the appellant, as set forth in the preceding paragraph, but it is the minority view.
A majority view is set forth in Pomeroy’s Specific Performance of Contracts, 3d Edition, § 264, p. 621, as follows:
“This latter form of the doctrine, in all its breadth, is maintained by a preponderance of judicial authority in this country by courts and jurists of the highest character. It holds that whether the contract is executory or executed, the plaintiff may introduce parol evidence to show a mistake or fraud *251 whereby the written contract fails to express the actual agreement, and to prove the modifications necessary to be made therein, whether such variation consists in limiting the scope of the writing, or in enlarging it so as to embrace land which had been omitted through the mistake or fraud, and that he may then obtain a specific enforcement of the contract thus varied; and such relief may he granted, although the contract is one which is required by the statute to be in writing. * * * It is settled, by the overwhelming preponderance of American authority, that a deed of land may be thus corrected by enlarging its scope, extending its operation to other subject-matter, supplying portions of land which have been omitted, making the estate conveyed more comprehensive— as, for example, changing a life estate into a fee and the like — and that the deed thus corrected may be enforced against the grantor * * * ” ■
The Supreme Court of Florida follows the majority rule and permits the reformation of contracts even though there was no written agreement as to the part sought to be included in the written agreement. See Shell Creek Land Co. v. Watson, 101 Fla. 172, 133 So. 621; and Williams v. Bettelini, 69 Fla. 193, 67 So. 857.
The attorney for the appellant strenuously argues in the appellant’s brief that the case of Hedges v. Lysek, Fla.1955, 84 So.2d 28, 31, requires the reversal of the lower court in this case. In the Hedges v. Lysek case, supra, the owner contracted to sell certain property lying west of U. S. Highway 19 to one party and to sell that portion lying east of Highway 19 to another party. A small house was located on the tract which lay to the west of Highway 19 while the tract east of the highway was unimproved property. All parties involved in the sale of these two tracts of land were under the belief that the small dwelling house was on Tract #1 (on the west side) while, in fact, it was located on Tract #2 (on the east side).
The Court, in its opinion, said:
“ * * * There was an unfortunate mistake that afflicted all of them and each of the transactions in which they were involved. Under such circumstances it is particularly appropriate that equity grant relief consistent with the rights of all parties concerned and suitable to the circumstances before the Court.
“It is not appropriate under the facts of this particular case to decree a reformation of the deed to appellee Kohn. This is so for the reason that there was no error or mistake in the description of the property conveyed to him, there is nothing really to ‘reform’ and he is therefore entitled to retain the title to all of the land which he bargained for by description and which his grantor intended to convey. Insofar as the description of the land is concerned there was therefore no mutuality of mistake between appellant Hedges and appellee Kohn. See Holley v. May, Fla.1954, 75 So.2d 696. For the same reason there was no equitable area for rescission or cancellation.”
We consider the facts in the instant case to be different from the facts in Hedges v. Lysek, supra. In that case one party intended to buy on the east side of the highway and the other on the west side so there was no mistake as to the description of the property. The mistake was that the house was located on a piece of property different from that which the parties thought it was located on, and the court required the party purchasing the tract of land on which the house was located to permit the party that actually purchased the house to remove it to the other tract of land.
In the instant case the purchaser wanted the property that was located between the pine tree and the oak tree and upon which he subsequently built his home and set out *252 orange trees. The owner and seller of the property knew, according to the testimony of various witnesses, that the property which the buyer wanted was located between the two trees in question and, as it developed, she knew they built a house on this property as well as set out the citrus trees. The lower court determined, as a factual situation, that this was a mutual mistake and ordered the deed reformed so that the buyers could get the property which was pointed out as being between the pine tree and oak tree, and which the seller knew she was selling although she did not know the legal description of the property in question.
In Hedges v. Lysek, supra, the Court also said:
“After a thorough consideration of this record, we are impelled to the conclusion that the Chancellor was in error in finding that there was no mistake of fact and by applying the doctrine of ‘after acquired title’ to the exclusion of the broad but equally well founded principle that when parties involved in a transaction have all labored under a mistake of fact common to all of them, equity should and will step in and restore each of the parties to the condition intended by them as if the mistake had not occurred. Historically, courts of equity came into being in order to provide a forum for the granting of relief in accordance with the broad principles of right and justice in cases where the restrictive technicalities of the law prevented the giving of relief. Inherent in equity jurisprudence is the doctrine that equity will always move to prevent an injustice engendered by fraud, accident or mistake. In the case before us we can see no equitable justification for permitting appellee Kohn to retain a building which he originally had no idea at all that he owned, which he never bargained for and which he never paid for. He intended to buy the land East of the road on the basis of the same map and the same notion as to the location of the road that led the appellant to buy the land West of the road. When the purchases were made all parties acted in absolute good faith. There was an unfortunate mistake that afflicted all of them and each of the transactions in which they were involved. Under such circumstances it is particularly appropriate that equity grant relief consistent with the rights of all parties concerned and suitable to the circumstances before the Court.”
The lower court is hereby affirmed.
Affirmed.
SHANNON, C. J., and SMITH, J., concur.